UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA              :

   -vs-                                :        No. 3: 23-CR-26-05

ROBERT THOMPSON, aka "Thugga,"        :        (JUDGE MANNION)

          Defendant                    :

GOVERNMENT'S SENTENCING MEMORANDUM

The defendant, Robert Thompson, is presently scheduled for sentencing before this Honorable Court on September 26, 2024, after having entered a plea of guilty to Count 1 of the Indictment, the charge of Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). The government hereby submits this sentencing memorandum as an aid to the Court in rendering a just sentence in this matter.

Pursuant to the terms of the plea agreement in this case (Doc. 491), the parties agreed to recommend that at least 400 grams of fentanyl, but less than 1.2 kilograms of fentanyl, are attributable to the defendant for the purposes of sentencing. *Id.* at ¶11.

1

<u>The Offense:</u>

The offense conduct is set forth in detail in the PSR. (*See* ¶¶ 17-24). This investigation began on February 18, 2021, after the drug overdose death of a twenty-eight-year-old woman in Wilkes-Barre. (¶ 17). The overdose victim was found alone in her vehicle with the engine still running. Three small blue pills – each stamped "M-30" – were found inside her vehicle. The investigation would reveal that the victim had purchased four small blue pills from a Wilkes-Barre based drug dealer. She died after ingesting just one pill.

As the investigation progressed, investigators learned of a wide-ranging drug trafficking conspiracy involving the trafficking of fentanyl pills sent via mail from Arizona to Pennsylvania. The indictment presently before the Court charges a conspiracy beginning in January 2020 through the date of the indictment – February 14, 2023. Many of the defendants in this indictment were ordering large quantities of fentanyl pills from, and transmitting cash payments to, one of several fentanyl sources in Arizona, including Davon Beckford and Tyla Griffin (both charged in a separate indictment), Shane Burns and/or Burns' girlfriend, Christina Patacky-Beghin. Packages containing fentanyl

pills were then sent to Pennsylvania from Arizona via the U.S. Postal Service.

The pills were then distributed by conspirators in MDPA.

Robert Thompson, known as "Thugga," was a distributor of fentanyl pills in the Lackawanna and Luzerne County area. His source for the pills was Tyla Griffin in Arizona (charged in a separate indictment). Thompson sent money for payment of the pills to Tyla Griffin via "Cash App." Tyla Griffin would then mail packages containing fentanyl pills to addresses associated with Thompson in Scranton and elsewhere. Text messages and mail tracking receipts found in Griffin's phone confirm the transactions between Thompson and Griffin. "Cash App" records confirm the transactions as well.

Upon receipt of the pills from Griffin, Thompson distributed the pills in the Lackawanna/Luzerne County area.

The plea agreement indicates that Thompson's role in the conspiracy involved the distribution of 400 grams to 1.2 kilogram of fentanyl, a Schedule II controlled substance. The drug weight is based on the price per pill charged by Tyla Griffin and the typical quantity of

3

pills mailed by Griffin from Arizona.

### The Presentence Report:

The U.S. Probation Office prepared a Presentence Investigation Report (PSR) in this case.  The PSR indicates that the defendant's total offense level is **30** and the criminal history category is **III**, resulting in an advisory guideline range of **121 to 151 months**.  PSR ¶ 75.

The PSR indicates that the defendant has prior adult criminal convictions for the following offenses:

¶ 40 **Receiving Stolen Property (Arrested in 2013)**

On October 28, 2013, Robert Thompson possessed and attempted to use two stolen credit cards in Teaneck, New Jersey

¶ 41 **Unauthorized Use of a Vehicle – Without Owner Consent (Arrested in 2014)**

On April 27, 2014, Robert Thompson sat inside a parked vehicle near 597 East 96th Street in Brooklyn.  Nearby police officers conducted a lawful stop after they detected a strong odor of marijuana from the vehicle.  Officers determined that the defendant did not possess the required documents to use the vehicle.

¶ 42 **Criminal Attempt: Theft by Deception False Impression (Arrested in 2015)**

On February 15, 2015, Robert Thompson attempted to pass a counterfeit $100 federal reserve note at Roadrunner Convenience Mart in Tannersville, PA.  When searched, the defendant was found in possession of marijuana and rolling papers.

¶ 43 <u>Fleeing or Attempting to Elude an Officer and Driving While Operator Privilege Suspended or Revoked (Arrested 2015)</u>

On August 26, 2015, Robert Thompson was pulled over by police for speeding on State Route 315 in Plains Township, PA. As officers approached, Thompson sped away in the vehicle. During a subsequent pursuit, Thompson turned off the vehicle's headlights and taillights. The defendant drove at speeds up to 90 miles per hour and into opposing traffic until he struck a cement median and lost control into an open field. The defendant attempted to evade officers on foot but was quickly apprehended.

¶ 44 <u>Driving Under the Influence/Incapable of Driving Safely (Arrested in 2019)</u>

Details of the offense have been requested by the U.S. Probation Office.

¶ 45 <u>Possession of Drug Paraphernalia and Driving Without a License (Arrested in 2018)</u>

On August 29, 2018, Robert Thompson was pulled over by police officers for multiple traffic violations on North Meade Street in Wilkes-Barre. The defendant did not have a valid driver's license and was in possession of a bag of marijuana and two Percocet pills.

¶ 46 <u>Disorderly Conduct (Arrested in 2020)</u>

On October 8, 2020, Robert Thompson was pulled over by state troopers for operating a vehicle at 83 miles per hour in a posted 55 miles per hour zone. Troopers immediately detected an odor of marijuana from the vehicle. A search of the vehicle resulted in the seizure of two marijuana cigarettes and a bag of loose marijuana.

The Criminal History Category here is III.

<u>Denial of Acceptance of Responsibility</u>

As the PSR notes, the defendant "has failed to demonstrate that

he has accepted responsibility." The PSR indicates the following:

> As set forth in paragraphs 2 through 11, the defendant provided *almost no compliance* to his conditions of federal bond. He used controlled substances, failed to secure employment, lied to pretrial services, incurred a traffic citation for driving without a license, and incurred new drug trafficking charges. It appears a reduction for acceptance of responsibility is not applicable. USSG § 3E1.1.

*See* PSR ¶ 27 (emphasis added)

Indeed, here, denial of acceptance of responsibility is appropriate under Third Circuit caselaw. (*See United States v. Mercado,* 81 F. 4th 352 (3d Cir. 2023) (upholding denial of reduction for acceptance of responsibility based on defendant's repeated drug use while the case was pending, his failure to attend treatment, and his failure to submit to drug testing); *United States v. Ceccarani*, 98 F.3d 126 (1996) (acceptance of responsibility denied based on defendant's testing positive for drugs on multiple occasions and defendant's rejection of opportunity for drug counseling and treatment); *United States v. Albright,* 38 Fed Appx. 700 (3d Cir. 2002) (upholding denial of acceptance of responsibility on basis of drug usage alone).

### The Sentencing Process:

District courts engage in a familiar three-step process when sentencing criminal defendants:

> A district court must begin the process by first calculating the applicable sentencing guidelines range. After that initial calculation, the court must then rule on any motions for departure and, if a motion is granted, state how the departure affects the guidelines calculation. Finally, after allowing the parties an opportunity for argument, the court must consider all of the § 3553(a) factors and determine the appropriate sentence to impose, which may vary from the sentencing range called for by the guidelines.

*United States v. Tomko,* 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

As indicated, in the PSR, the U.S. Probation Office determined that the defendant's total offense level is **30** and his criminal history category is **III**, resulting in an advisory guideline range of **121 to 151 months.**

### The Sentencing Factors:

Under the sentencing statute, the sentence to be imposed needs to reflect the seriousness of the offense, promote respect for the law, provide for just punishment, deter others from engaging in similar conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training,

7

medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

**Fentanyl is Killing Americans at an Unprecedented Rate:**

Here, Robert Thompson, known as "Thugga," is responsible for the distribution, and possession with intent to distribute, between 400 grams and 1.2 kilograms of fentanyl. The crime is serious. Fentanyl is a highly addictive and dangerous substance. The amount for which the defendant is accountable is very significant, particularly when one considers that the use – literally – of just a few grains or specks of fentanyl can result in overdose or death. In fact, the investigation in the present matter began with the accidental overdose death of a twenty-eight-year-old woman in Wilkes-Barre who ingested one small pill containing just a few grains amount of fentanyl.

More than 1 million people have died since 1999 from a drug overdose.[1] In 2021, 75% of drug overdose deaths involved an opioid, including prescription opioids, heroin, and fentanyl.[2] Overdoses

---

[1] Data Overview | Opioids | CDC
[2] *Id.*

involving opioids killed more than 80,000 people in 2021 and nearly 88% of those deaths involved synthetic opioids like fentanyl.[3]

Provisional data shows that drug overdose deaths in the United States surpassed 100,000 in 2022.[4] Fentanyl was responsible for 73,654 of those deaths.[5] Fentanyl deaths have increased every year for the past decade.[6]

In April 2022, DEA administrator Anne Milgram outlined the current fentanyl overdose threat and stated, "*Fentanyl is killing Americans at an unprecedented rate.* Already this year, numerous mass-overdose events have resulted in dozens of overdoses and deaths. Drug traffickers are driving addiction, and increasing their profits, by mixing fentanyl with other illicit drugs. Tragically, many overdose victims *have no idea* they are ingesting deadly fentanyl, until it's too late."[7] (This is precisely what happened in the present investigation. The accidental overdose victim in Wilkes-Barre thought she was

---

[3] *Id.*
[4] [Provisional Data Shows U.S. Drug Overdose Deaths Top 100,000 in 2022 | Blogs | CDC](#)
[5] [Are fentanyl overdose deaths rising in the US? (usafacts.org)](#)
[6] *Id.*
[7] https://www.dea.gov/press-releases/2022/04/06/dea-warns-increase-mass-overdose-events-involving-deadly-fentanyl

ingesting a Percocet pill.)

According to the Pennsylvania Attorney General's Office, the opioid epidemic is the number one public health and public safety challenge facing Pennsylvania.[8]  Pennsylvania's overdose death rate is 71.9% higher than the national average overdose death rate.[9]  Over 6% of nationwide overdose deaths occur in Pennsylvania.[10]  As this Court is well aware, the opioid epidemic continues to impact the Middle District of Pennsylvania.

In August 2023, the Pennsylvania Department of Health issued their findings regarding fatal and non-fatal overdoses in Pennsylvania in 2021.[11]  In 2021, 5,356 drug overdose deaths occurred in Pennsylvania and 85% were confirmed to be opioid related.[12]

---

[8] Opioid Battle – PA Office of Attorney General
[9] Drug Overdose Death Statistics [2023]: Opioids, Fentanyl & More (drugabusestatistics.org)
[10] Drug Overdose Death Statistics [2023]: Opioids, Fentanyl & More (drugabusestatistics.org)
[11] Pennsylvania Overdose Data Brief 2021.pdf (pa.gov)
[12] Pennsylvania Overdose Data Brief 2021.pdf (pa.gov)

Importantly, for every drug overdose that results in death, there are many more nonfatal overdoses.[13] People who have had at least one overdose are more likely to have another.[14] Between January 1, 2018, and July 15, 2023, Pennsylvania emergency service personnel administered 89,360 doses of Naloxone.[15] During that same time period, there were 52,570 emergency room visits for opioid overdoses.[16] Accordingly, there are scores of individuals living with addiction and committing crimes to support their habits. Crime increases when addicts deplete their savings and bargain away their possessions to support their habit.

Interviews of drug users and treatment personnel indicate that users often experience multiple drug overdoses in the course of their drug use, and "widespread naloxone availability has resulted in many lives saved."[17] In addition to the overdoses, the economic and social costs to the community are overwhelming. Fentanyl, heroin, and other

---

[13] Understanding Drug Overdoses and Deaths | Drug Overdose | CDC Injury Center
[14] Understanding Drug Overdoses and Deaths | Drug Overdose | CDC Injury Center
[15] Pennsylvania Opioids | PA Open Data Portal
[16] Pennsylvania Opioids | PA Open Data Portal
[17] *Id.*

11

opioids tear apart families, and the community is left to support loved ones left behind. It has impacted families across all racial groups, geographic regions and socioeconomic classes.[18]

This Court should consider these statistics and the havoc that fentanyl and the other opioids are wreaking in our community when it imposes its sentence in this case.

Here, Robert Thompson was part of a wide-spread fentanyl trafficking conspiracy that wreaked havoc in our community. The conspiracy in which he participated was responsible for distributing thousands of fentanyl pills on the streets of Northeastern Pennsylvania. He is personally accountable for distributing a large amount of fentanyl – 400 grams to 1.2 kilograms – a huge amount considering the fact that just a few specks of fentanyl can cause death. He has seven prior adult convictions. His behavior while on pretrial services supervision is very concerning – with repeated positive drug screens for controlled substances, a citation for driving without a license, lying to his probation officer, failing to seek employment, failing to seek drug treatment, reporting to Pretrial Services while "hungover" – all

---

[18] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7829093/

culminating in an *arrest* in Scranton in March 2024 for conspiracy to deliver or possess with intent to deliver fentanyl and cocaine base – conduct similar to that for which the defendant is about to be sentenced. (PSR ¶¶ 2-11, 48).

From the government's perspective, the important factors set forth in 18 U.S.C. §3553(a) which the Court must consider in imposing a sentence on this defendant include the need for the sentence to:

- reflect the seriousness of the offense,
- promote respect for the law,
- provide just punishment for the offense,
- afford adequate deterrence to criminal conduct and
- protect the public from further crimes of the defendant.

(*See* 18 U.S.C. § 3553(a)).

Based on the above, the government recommends that this Court impose a sentence which is within – *and not below* – the advisory guideline range of **121 to 151 months**

Respectfully submitted,

GERARD M. KARAM
United States Attorney

By: /s/ *ROBERT J. O'HARA*
ROBERT J. O'HARA
Assistant U.S. Attorney

Date:  September 20, 2024

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| -vs- | : | No. 3: 23-CR-26-05 |
| ROBERT THOMPSON, aka "Thugga," | : | (JUDGE MANNION) |
| Defendant | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on September 20, 2024, she served a copy of the attached:

**GOVERNMENT'S SENTENCING MEMORANDUM**

By email to:

Attorney Joseph M. Blazosek
Counsel for the Defendant

/s/ Terri L. Pendolphi
Terri L. Pendolphi
Legal Administrative Specialist